UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| BARRY O' CONNOR,<br>    Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF RHODE ISLAND,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 21-cv-00343-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff, Barry O'Connor, ("O'Connor") alleges that he suffered an adverse employment action in violation of the Rhode Island Fair Employment Practices Act ("FEPA") because he took steps to enforce his rights under the Act. Before the Court is the Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 of the defendant, University of Rhode Island ("URI"). (ECF No. 17.)

I.     BACKGROUND

Mr. O'Connor was an administrative employee of URI. His short-lived employment with URI was disharmonious. He was admittedly unfamiliar with certain processes integral to his position. Ultimately, URI suggested that Mr. O'Connor transition to a new, lower-paying position. He declined and was terminated. At the pleading stage, Mr. O'Connor alleged that URI failed to train him on the essential functions of his position and ultimately terminated him because of his protected characteristics. Mr. O'Connor now concedes that discovery revealed

"insufficient evidence … to support his [two discrimination] claims under the Civil Rights statutes … [and] his FEPA discrimination claim." (ECF No. 21 at 7.) However, he continues to assert a single retaliation claim, alleging that he held a reasonable, good-faith belief that a FEPA violation had occurred and that he suffered an adverse employment action because he took steps to enforce his rights under the Act. *Id.*

## II.  DISCUSSION

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.,* 895 F.2d 4. 50 (1st Cir. 1990). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000). The court views the facts at summary judgment "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).

To establish a prima facie case of retaliation under FEPA sufficient to survive summary judgment, a plaintiff must show that (1) he engaged in protected conduct; (2) that he suffered an adverse employment action; and (3) that the adverse action was causally connected to the protected conduct. *Shoucair v. Brown Univ.*, 917 A.2d 418, 427 (R.I. 2007). Establishing a prima facie retaliation case does not wholly depend on the success of an underlying discrimination claim; "[i]t is enough [if] the plaintiff had a reasonable good-faith belief that a … violation occurred; that [the plaintiff] acted on it; that the employer knew of the plaintiff's conduct; and that the employer lashed out in consequence of it." *Cugini v. R.I. Bd. of Governors for Higher Educ.*, 2020 WL 2145885, at *14 (R.I. Super. Ct. April 28, 2020) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991)).

URI asserts that undisputed facts demonstrate that it did not "lash[] out in consequence" to Mr. O'Connor's protected conduct. (ECF No. 25 at 4.) To support its position, URI points to evidence in the record "which confirms that URI offered months of training opportunities, corrective action plans, performance improvement plans and weekly meetings to assist [Mr. O' Connor] with his performance of, and success in his position." *Id.* at 5. URI contends that there was no discriminatory failure to train Mr. O'Connor and asserts that his ultimate termination was not in reaction to his complaints.

Mr. O'Connor does not genuinely dispute that he was offered and received training. (ECF No. 21 at 7.) Instead, he points the Court's attention to the allegations

3

that he was retaliatorily assigned to a new work site, deprived of resources, and ultimately terminated. (ECF No. 21 at 8.)

Mr. O'Connor claims that he was retaliatorily transferred to URI's Providence campus. However, undisputed facts show that he was temporarily transferred to the Providence campus to assist students early in the academic year with financial-aid-related questions, as was URI's customary practice. (ECF No. 17 at 6–7.) The facts also show that Mr. O'Connor lived near Providence, appeared happy with the transfer, and offered to stay at that campus permanently. *Id.* Because Mr. O'Connor's complaints did not cause his transfer, he cannot support a retaliation claim based on that conduct. *See Shoucair*, 917 A.2d at 427.

Additionally, Mr. O'Connor claims that he was retaliatorily deprived of resources necessary to his job success. (ECF No. 21 at 8.) Yet the undisputed facts show that URI not only met his needs but also went above and beyond to help him succeed in his position. (ECF No. 17 at 2–8.) Mr. O'Connor received a training manual prepared specifically for him when he began his employment, and a training schedule was prepared on his behalf. *Id.* at 2. For at least fourth months, Mr. O'Connor was offered and did receive training in alignment with the schedule. *Id.* Less than two months into his employment, Mr. O'Connor's supervisors also offered to conduct additional weekly meetings with him to provide training and support, which he declined. *Id.* at 3. Mr. O'Connor was later given a corrective action memo outlining areas of concern and providing specific corrective action steps. *Id.* at 4. URI then implemented a performance improvement plan, which reiterated the corrective

4

action steps, and conducted a performance improvement meeting with Mr. O'Connor where they discussed job expectations and set goals. *Id.* at 5. This eventually led to daily training sessions between Mr. O'Connor and his supervisor. *Id.* at 6. And on or about June 14, 2019, Mr. O'Connor received a Non-Classified Six-Month Probationary Performance Evaluation Report, which put him on notice of his supervisor's recommendation he should be terminated if he failed to correct the "ongoing deficiencies" in his job performance. *Id.* Put simply, the undisputed evidence shows that Mr. O'Connor was not deprived of resources necessary to his job success.

Finally, Mr. O'Connor claims that he was retaliatorily terminated. During the meeting where he was terminated, URI offered him a new position as an enrollment services officer. (ECF No. 21 at 9.) Mr. O'Connor asserts that this employment offer was contingent on dropping his discrimination claim. *Id.* He argues that because the employment offer included a condition requiring him to drop his discrimination claim, his termination was necessarily caused by his filing of that claim. *Id.*

Even if the URI's offer depended on Mr. O'Connor dropping his charge, that does not mean that the protected conduct caused his termination. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("[R]etaliation claims must be proved according to traditional principles of but-for causation…. This requires proof that the unlawful retaliation would not have occurred in the absence of the [protected conduct]."); *see also Shoucair*, 917 A.2d at 426 (the same standard applies to both FEPA and Title VII retaliation claims). Undisputed facts demonstrate that URI

5

identified and communicated issues with Mr. O'Connor's job performance well before he engaged in any protected activity. (ECF No. 25 at 7); *see also Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 37 (1st Cir. 2011) (a retaliation claim cannot be based on conditions that long predated the protected action). Undisputed facts also show that Mr. O'Connor's Six-Month Probationary Performance Evaluation Report recommended termination if the identified issues were not adequately addressed within thirty days. (ECF No. 17 at 7.) The undisputed facts demonstrate that the decision to terminate Mr. O'Connor was performance based. URI's willingness to offer him a position outside enrollment services where he could work more directly with students, which was one of his strengths, in exchange for the withdrawal of his Charge of Discrimination does not raise a genuine dispute about what caused his termination.

Because undisputed facts show that URI did not lash out as a result of Mr. O'Connor's charge, Mr. O'Connor's retaliation claim fails as a matter of law.

### III.   CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
January 30, 2024

6